IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JULIAN SAHAGUN RODRIGUEZ | ) | |
| | ) | Cr. No. 05-070T |
| vs. | ) | C.A. No. 07-326T |
| | ) | |
| UNITED STATES OF AMERICA | ) | |

GOVERNMENT'S OBJECTION TO MOTION
UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR
CORRECT SENTENCE BY PERSON IN FEDERAL CUSTODY

Now comes the United States of America, by its Attorneys, Robert Clark Corrente, United States Attorney, and Kenneth P. Madden, Assistant U. S. Attorney, and objects to petitioner's Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By Person in Federal Custody for those reasons stated in the accompanying memorandum.

Respectfully submitted,

UNITED STATES OF AMERICA
By its attorneys,

Robert Clark Corrente
United States Attorney

/s/ Kenneth P. Madden
Kenneth P. Madden
RI Bar 1680
Assistant U. S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
401-709-5000
401-709-5001 (fax)

CERTIFICATION

I hereby certify that on the 23rd day of October, 2007, I mailed a true copy of the Within Government's Objection To Petitioner's Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By Person in Federal Custody, ordinary mail and postage prepaid, to:

Julian Sahagun Rodriguez
Reg. No. 05625-070
Federal Correctional Institution
P. O. Box 5000
Sheridan, Oregon 97378-5000

/s/ Kenneth P. Madden
Kenneth P. Madden
RI Bar No. 1680
Assistant U. S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
401-709-5000
401-709-5001 (fax)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JULIAN SAHAGUN RODRIGUEZ | ) | |
| | ) | Cr. No. 05-070T |
| vs. | ) | C.A. No. 07-326T |
| | ) | |
| UNITED STATES OF AMERICA | ) | |

GOVERNMENT'S MEMORANDUM IN SUPPORT OF ITS
OBJECTION TO MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET
ASIDE, OR CORRECT SENTENCE BY PERSON IN FEDERAL CUSTODY

INTRODUCTION

Petitioner Julian Sahagun Rodriguez (Rodriguez) files this motion pursuant to 28 U.S.C. § 2255. Rodriguez presents several grounds for his petition:

> Ground One: Error in that the Indictment did not allege the purity level of the cocaine and other nonspecific "material" facts.
>
> Ground Two: The Court impermissibly upwardly departed in violation of Rule 32.
>
> Ground Three: Denial of effective assistance of counsel.[1]

For each of these grounds, Rodriguez references a number of items, most of which are inapplicable to his case or are unsubstantiated conclusions. The motion is neither supported by the facts nor the law. The government, therefore, requests that the motion be denied and dismissed.

FACTS AND TRAVEL

[1] Petitioner lists Ralph Perotta as defense counsel. However, John Verdeccia appeared for Rodriguez at both the change of plea and sentencing hearings.

The facts which follow are taken from the guilty plea colloquy on October 14, 2005 (T. 10/14/05 at pp. 14-16) and from the Presentence Investigation Report (PSR) to which Rodriguez makes no objection.

On June 7, 2005, agents of the Drug Enforcement Administration (DEA) received information that a white and tan recreational vehicle (RV) with no license plates was located at the Burger King at Eddy Street and Thurbers Avenue, Providence. The information indicated that the RV was carrying a large amount of cocaine. Agents of the DEA set up surveillance in the area. Task Force Agent (TFA) Michael Naylor saw the driver of the RV get out and meet with the passenger of a dark blue Nissan Maxima. The passenger was later identified as Rodriguez.

The driver of the RV and Rodriguez went into the Burger King. While in there, the driver of the Maxima, Pedro Gonzales, watched every car as it passed him, acted as though he was very nervous, sat low in his seat, and repeatedly checked all directions around the car.

Shortly after entering the Burger King, both the driver of the RV and Rodriguez exited the restaurant and entered the RV. After about five minutes, the RV left the Burger King parking lot, pulled onto Eddy Street and waited until Gonzales, driving the Maxima, pulled behind it. The two vehicles then turned onto Pavilion Street and drove to the corner of Ocean and Nebraska Streets where they stopped.

Rodriguez got out of the RV carrying a large, black duffle bag. The duffle bag appeared to be heavy. Rodriguez carried the duffle bag to the Maxima and put it in the rear seat. Rodriguez made two additional trips from the RV to the Maxima, each time taking a large, heavy, black duffle bag from the RV and placing it in the rear seat of the Maxima. Rodriguez

then took a white shopping bag from the Maxima and brought it into the RV. Shortly after that, Rodriguez left the RV and entered the front passenger seat of the Maxima.

TFA Naylor and other agents followed the Maxima containing Rodriguez and Gonzales to Lennox Street, Providence where it parked in front of 167/169 Lennox Street. Franklin Soto Pena walked up to the Maxima. Both Gonzales and Rodriguez got out of the car and spoke with Soto Pena. Soto Pena opened the rear door of the Maxima and looked into the duffle bags.

A Providence Police cruiser arrived at the scene, and TFA Naylor approached Rodriguez, Gonzalez, and Soto Pena as they stood by the Maxima. TFA Naylor asked Rodriguez to put his hands on the car, which Rodriguez did. TFA Naylor looked into the Maxima and saw that one of the large, black duffle bags was open. TFA Naylor saw that the duffle bag contained many kilogram-sized packages consistent with cocaine packaging.

The agents seized the Maxima and had it taken to the local DEA office. Once there, they found that the three large duffle bags held 64 packages totaling approximately 62 kilograms of cocaine. A subsequent laboratory analysis was positive for cocaine at 88% purity with a net weight of 61.44 kilograms.

Cellular telephones were seized from Rodriguez, Gonzales and Soto Pena and from an apartment at 167/169 Lenox Street. The telephones were examined and the telephone numbers stored in them were obtained. An analysis of those numbers showed that one of Rodriguez's telephones received or made calls to numbers common to several of the other seized telephones.

On June 8, 2005, the grand jury indicted Rodriguez for conspiracy to distribute and to possess with intent to distribute over five kilograms of cocaine, in violation of 21 U.S.C. § 846, and with possession with intent to distribute over five kilograms of cocaine, in violation of 21

U.S.C. §§ 841(a)(1) and (b)(1)(A) and 18 U.S.C. § 2.[2]

On October 14, 2005, Rodriguez pleaded guilty to the indictment pursuant to a written plea agreement. Under the terms of the plea agreement, Rodriguez agreed to plead to the indictment. He agreed that the substance seized was cocaine with a net weight of 61.44 kilograms and a purity of 88%. Lastly, Rodriguez agreed to waive his right to appeal if the sentence imposed by the Court was within or below the guideline range. In return, the government agreed to recommend the low end of the applicable guideline range or the statutory mandatory minimum, whichever was greater, and to recommend a three level reduction for acceptance of responsibility. If Rodriguez sought a downward departure under the guidelines or advocated for a sentence below the guideline range, the government was free to recommend any term within the applicable guideline range. The plea agreement did not contain a reference to the "safety valve" provision found in Title 18 and the Sentencing Guidelines.

As part of the Rule 11 plea colloquy, the government recited those facts it would have proven had the case gone to trial. Rodriguez, after consultation with his counsel, interposed no objection to the facts. (T. 10/14/05 at p. 16) Likewise, he did not contest the prosecution version in the Presentence Report (PSR).

The Court, well aware that the guidelines were advisory pursuant to Booker (T. 1/27/06 at pp. 3-4), imposed sentence on January 27, 2006 and sentenced Rodriguez to 135 months imprisonment, five years supervised release with deportation conditions, and a $100 special assessment. Contrary to the terms of the plea agreement, Rodriguez prosecuted an appeal to the

---

[2] Gonzalez was convicted after trial and sentenced to 196 months imprisonment. Soto Pena was found not guilty by the jury.

First Circuit. CA. 06-1284. He was represented on appeal by Ralph J. Perrotta, Esq. The only issue raised was whether the District Court erred in remarks explaining the requirements and benefits of "safety valve" relief to Rodriguez. The First Circuit rejected the claim and affirmed the conviction on March 9, 2007.

ARGUMENT

RODRIGUEZ IS NOT ENTITLED TO A HEARING OR TO COUNSEL

Section 2255 provides that the Court should hold a hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." Rule 4 of the Rules Governing Section 2255 Proceedings For The United States District Courts provides in pertinent part that "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." The First Circuit has stated that no hearing is required where the § 2255 motion: "(1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case." Moran v. Hogan, 494 F.2d 1220, 1222 (1st Cir. 1974); United States v. Carbone, 880 F.2d 1500, 1502 (1st Cir. 1989). Moreover, the First Circuit has also held that "no hearing is required where the district judge is thoroughly familiar with the case." Ouellette v. United States, 862 F.2d 371, 377 (1st Cir. 1988); Panzardi-Alvarez v. United States, 879 F.2d 975 n.8 (1st Cir. 1989). A District Judge's personal observation and recollection of the events at trial may supplement the record. Gregory v. United States, 585 F.2d 548, 550 n.1 (1st Cir. 1978); United States v. DiCarlo, 575 F.2d 952, 954-955 (1st Cir. 1978). The burden is on the petitioner to prove by a preponderance of the evidence that he is entitled to a hearing. Myatt v. United States, 875 F.2d 8, 11 (1st Cir. 1989). In considering a motion under

§ 2255, the District Court should accept the petitioner's allegations as true "except to the extent they are contradicted by the record, inherently incredible, or conclusions rather than facts." United States v. Mosquera, 845 F.2d 1122, 1124 (1st Cir. 1988). If an evidentiary hearing is warranted, the Court must appoint an attorney to represent an indigent petitioner. Rule 8(c) of the § 2255 Rules.

In the instant case, no evidentiary hearing is required because all of Rodriguez's claims can be resolved by reference to the record or by relying on the knowledge and memory of the Court. Gregory, 585 F.2d at 550 n.1; DiCarlo, 575 F.2d at 954-955. Portions of the record necessary to decide this motion include (1) the transcript of the change of plea hearing; (2) the PSR; (3) a copy of the plea agreement; and (3) the transcript of the sentencing hearing.

THE INDICTMENT WAS LEGALLY SUFFICIENT ON ITS FACE

As Ground One of his motion, Rodriguez claims that "the material facts and purity of the drugs was not alleged in the indictment." The indictment to which Rodriguez pleaded guilty tracked the statutory language for possession with intent to distribute five kilograms or more of cocaine and conspiracy to commit this substantive offense found at 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) and 846. An indictment set forth in the words of the statute is sufficient. United States v. Serino, 835 F.2d 924 (1st Cir. 1987). The indictment fairly placed Rodriguez on notice as to the offense charged. He fails to provide the Court with any statutory or case law authority which requires that the indictment allege "purity level of the drugs" or "material facts" or "material sentencing facts." Further, he does not even set forth with specificity what material facts should have been alleged in the indictment and how their absence worked to his prejudice.

If by this claim, Rodriguez means that his sentence was imposed in violation of Blakey v. Washington, 124 S.Ct. 2531 (2004), United States v. Booker, 125 S.Ct. 738 (2005), and Apprendi v. New Jersey, 530 U.S. 466 (2000), he errs. As noted above, the Court was well aware that the guidelines were advisory, and that under Booker, Rodriguez could be sentenced outside the advisory guidelines range. Further, Apprendi, holds that other than the fact of a prior conviction, any fact which increases the penalty beyond the prescribed statutory maximum must be submitted to the jury and proved beyond a reasonable doubt. Rodriguez pleaded to indictment counts which alleged over five kilograms of cocaine, and he admitted facts which set his statutory maximum as life imprisonment. Even if there were some doubt as to that, his default statutory maximum sentence was twenty years. A sentence of 135 months was well below that ceiling.

This claim should be denied.

RODRIGUEZ'S INEFFECTIVE ASSISTANCE OF COUNSEL ARGUMENT FAILS TO SUSTAIN A COGNIZABLE CLAIM

The two-part test for evaluating ineffective assistance of counsel claims was established by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 687-688 (1984). A defendant must show both: 1) that his attorney's performance fell below an objective standard of reasonableness; and 2) that he was prejudiced as a result of his attorney's deficient performance. Id.; Mathews v. Rakiey, 54 F.3d 908, 916 (1st Cir. 1995); Scarpa v. Dubois, 38 F.3d 1, 8-9 (1st Cir. 1994); United States v. Caggiano, 899 F.2d 99, 101 (1st Cir. 1990). The defendant's burden is by a preponderance of the evidence.

With regard to the first element, "[c]ounsel's judgment is subject to highly deferential review," United States v. Gomes, 177 F.3d 76, 83 (1st Cir. 1999), and "[a] fair assessment of

attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." Strickland, 466 U.S. at 689. The defendant must establish that counsel's performance was not within the wide range of reasonable professional assistance. Singleton v. United States, 26 F.3d 233, 238 (1st Cir. 1994). The Court should indulge a "'strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance.'" Singleton, 26 F.3d at 238 (quoting Strickland, 466 U.S. at 689). See also Scarpa, 38 F.3d at 8.

Prejudice exists when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694; Gonzalez-Soberal v. United States, 244 F.3d 273 (1st Cir. 2001).

Strickland applies not only to trials, but to guilty plea challenges. Under the first prong, the defendant must show that his counseled guilty plea was based on advice which is outside the range of competence demanded of attorneys in criminal cases. To establish prejudice, the defendant must show that there is a reasonable probability that but for counsel's errors, he would not have pled guilty and would have insisted on proceeding to trial. Lopez-Nieves v. United States, 917 F.2d 645, 648 (1st Cir. 1990).

Moreover, even if a defendant is able to show that counsel's error affected the outcome of his case, he is not necessarily entitled to reversal. The Supreme Court has made clear that a prejudice analysis "focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective." Lockhart v. Fretwell, 506 U.S. 364, 369 (1993). A Court should not "set aside a conviction or sentence solely because the outcome would have been different but for counsel's error." Id. at 369-70. Rather, reversal is warranted only if a court also concludes that the result of the trial was

"fundamentally unfair or unreliable." Id. at 369; accord Tejeda v. DuBois, 142 F.3d 18, 22 (1st Cir. 1998); Carey v. United States, 50 F.3d 1097, 1101 (1st Cir. 1995); Scarpa, 38 F.3d at 16; Lema v. United States, 987 F.2d 48, 51 (1st Cir. 1993).

Counsel need not jump through every conceivable hoop, nor engage in futile exercise, in order to be considered effective. Singleton, 26 F.3d at 239; United States v. Cronic, 466 U.S. 648, 656 n. 19 (1984).

Here, Rodriguez's claims are contradicted by the record. Rodriguez had an experienced criminal defense attorney who acted reasonably in representing Rodriguez.

Beginning on page 8 of his supporting memorandum, Rodriguez lists 19 errors and omissions which he attributes to his defense counsel:

Allegation 1: Rodriguez contends that counsel erred in stipulating to the government's exhibits without requiring a transcript of tape recorded conversations which he states were unintelligible, inaudible, and uncorroborated by eyewitness testimony. There were no such stipulations entered into by the parties in this case. There were no tape recorded conversations. The only "stipulations" were those stated in the plea agreement that the substance involved was cocaine at 88% purity with a weight of 61.44 kilograms. This information came from the analysis report provided by the DEA's Northeast Laboratory. Rodriguez provides no evidence that the analysis was in error. Neither does he describe the stipulations to which he now objects. This ground should be denied.

Allegation 2: Rodriguez argues that an investigator should have been hired and that "all parties involved were working for the Government," including defense counsel. Rodriguez fails to specify what witnesses an investigator could have uncovered and interviewed; what

information such witnesses could have provided; and what other information an investigator could have uncovered which could have affected the issues of guilt or punishment. He also fails to provide facts showing that his counsel was "working for the Government." This claim should be denied.

Allegation 3: Rodriguez states that counsel permitted Rodriguez to enter a plea in a case based upon perjured testimony, unfounded evidence, circumstantial evidence, and inferences piled upon inferences. Like his other claims, Rodriguez fails to identify the tainted evidence. Further, his claim is inconsistent with his testimony at the change of plea hearing. Rodriguez was sworn under oath (T. 10/14/05 at p. 6); he stated he was pleading guilty of his own free will (T. 10/14/05 at p. 10); and he agreed that all of the facts recited by the prosecutor were true (T. 10/14/05 at p. 16). Further, the Court found that a factual basis for the plea existed. (T. 10/14/05 at p. 17) This allegation should be rejected.

Allegation 4: Rodriguez argues that his counsel did not submit a sentencing memorandum detailing his civic and charitable contributions in support of a lenient sentence. Again, Rodriguez fails to provide details. He does not recite the nature of these contributions or even claim that he brought them to the attention of his counsel. Even the PSR is silent as to any such achievements. Further, it is difficult to imagine what types of civic and charitable deeds could offset involvement in the possession of 61 kilograms of cocaine. This claim should be rejected.

Allegation 5: This claim should be rejected as Rodriguez does not state what he believed his counsel should have done.

Allegation 6: Rodriguez claims that defense counsel failed to contest the prior convictions, resulting in his classification as a career offender. The PSR did not classify

Rodriguez as a career offender. To the contrary, he had no identifiable juvenile adjudications and adult convictions and was assigned a Criminal History Category (CHC) I. This ground should be rejected.

Allegation 7: Rodriguez contends that counsel failed to properly present the Government's offer of a plea agreement. Rodriguez's claim is not clear. If he means that the terms of the plea agreement were not adequately explained, his claim is contradicted by the record. At the change of plea hearing, the essential terms of the plea agreement were explained by the prosecutor. (T. 10/14/05 at pp. 3-4) Rodriguez testified that the document was read to him; that it was explained to him by his counsel; that he understood the document; that nothing was left out of the document; and that he signed the document. (T. 10/14/05 at pp. 8-9) This ground should be rejected.

Allegation 8: Rodriguez claims his counsel failed to present an entrapment defense. Rodriguez does allege any facts upon which even a colorable entrapment defense could be raised. Failing to do so, this ground should be rejected.

Allegation 9: Rodriguez states his counsel failed to investigate. He does not state what his counsel should have investigated; what the investigation would have shown; and how the results would have impacted guilt, his decision to plead guilty, or his sentencing. This ground should be rejected.

Allegation 10: Rodriguez states that counsel failed to present the case as he requested. Rodriguez does not detail for the Court what actions or steps he directed counsel to take. Absent this, the claim should be rejected.

Allegation 11: Rodriguez contends counsel erred in not challenging the application of the Guidelines "in respect to obstruction of justice." No such enhancement was applied in this case. This claim should be rejected.

Allegation 12: Rodriguez states counsel failed to object to the PSR. He does not further identify those portions of the PRS to which counsel should have objected. This ground should be rejected.

Allegation 13: Rodriguez contends that counsel erred in failing to challenge the indictment as duplicitous and failing to challenge the allegation of the use of a telephone to facilitate the distribution of controlled substances. The indictment charged, in Count I, a conspiracy to distribute and to possess with intent to distribute over five kilograms of cocaine, and, in Count II, possession with intent to distribute over five kilograms of cocaine. A duplicitous count is one which charges more than one offense in a single count. United States v. Valerio, 48 F.3d 58, 63 (1st Cir. 1995). See also, Braverman v. United States, 317 U.S. 49, 54, 63 S.Ct. 99, 102 (1942) ("The allegation in a single count of a conspiracy to commit several crimes is not duplicitous. . . " ). Neither count of the indictment is duplicitous. Further, there was no telephone facilitation charge alleged in the indictment. This ground should be rejected.

Allegation 14: Rodriguez appears to argue that the government's investigation was inadequate and that the evidence presented to the grand jury consisted of "assumptions." Rodriguez does not point out where the fault lies with the government's investigative steps, nor does he specify the "assumptions" relied upon by the government. Further, he does not even reference any specific grand jury testimony which he considers inadequate or incompetent. This ground should be rejected.

Allegation 15: Rodriguez contends his counsel was ineffective in connection with representation at the change of plea hearing. He argues his counsel: 1) failed to properly challenge the conviction that served as the basis for the career offender enhancement; 2) failed to "properly challenge the Government's offer of a plea agreement;" 3) failed to properly challenge the constitutional validity of the prior conviction used to qualify the defendant as a career offender; and 4) failed to keep prejudicial information from the Court. Regarding grounds 1 and 3, Rodriguez was not classified as a career offender. As previously noted, he had no prior juvenile adjudications or adult convictions. Regarding ground 2, Rodriguez agreed to the terms of the plea agreement and confirmed there were no promises beyond those stated in the plea agreement. Further, he does not identify any objectionable terms. Regarding ground 4, Rodriguez does not identify the prejudicial information or how, if it existed, it impacted the Court. (T. 10/14/2005 at pp. 8-10) This ground should be rejected.

Allegation 16: Rodriguez argues his counsel failed to investigate, failed to challenge and impeach witnesses, as well as failing to call a particular witness. No witnesses were called to testify. Rodriguez pleaded guilty. There was no trial. No testimony was presented at the sentencing hearing. Further, Rodriguez neither identifies a witness he wanted called nor summarizes what that person would have said. This ground should be rejected.

Allegation 17: Rodriguez argues that his sentence of 135 months imprisonment exceeded the statutory maximum of 120 months. The statutory maximum penalty for the offenses to which Rodriguez pleaded guilty was life imprisonment, with a statutory mandatory minimum of 120 months imprisonment. There was no error.

Allegations 18: Rodriguez claims his counsel was unwilling to assist him and totally controlled the case. He provides no specifics. This failure dooms his claim. It should be rejected.

Allegation 19: This allegation makes no claim, but merely states that a counsel who violates the "Code of Professional Conduct" deserves more than a mere reprimand. There is nothing to resolve.

PETITIONER'S PLEA WAS KNOWING AND VOLUNTARY

At page 12 of his Memorandum, Rodriguez states he was in a "drug-induced state" at the time of the change of plea, and therefore, his plea of guilty was not knowing, voluntary, and intelligent. The transcript of the change of plea hearing fully undercuts this claim. The Court, as is its custom, specifically inquired whether Rodriguez had taken any drugs. Rodriguez informed the Court he was taking a preventative Tuberculosis medication, but that the medication did not affect his ability to think clearly and understand the proceedings. (T. 10/14/05 at pp. 6-7) Further, the transcript shows that Rodriguez responded appropriately to the Court's questions. The record does not support the claim of a "drug-induced state" or an unknowing, involuntary , and unintelligent plea of guilty.

Rodriguez also makes unspecified claims of his plea being made without full understanding of the nature of the charges and that he was coerced. Memorandum, p. 12. Even a cursory reading of the transcript for the plea hearing shows that the nature of the charges, the offense elements the government would be required to prove at trial, the maximum and minimum penalties, and the terms of the plea agreement were explained to Rodriguez. (T. 10/14/05 at pp. 2-5) Further, Rodriguez assured the Court that he was not changing his plea as the result of

coercion. (T. 10/14/05 at pp. 9-10) The record does not support this claim.

VENUE WAS PROPER

At page 13 of his Memorandum, Rodriguez claims his counsel erred by permitting Rodriguez to enter a plea in conflict with 28 U.S.C. § 1391(b). The cited section applies to venue in a civil action not founded totally on diversity of citizenship. The statute has no application to the instant criminal case. Rodriguez was arrested in Providence, Rhode Island in possession of 61.44 kilograms of cocaine. Nothing further is needed for venue. There was nothing for counsel to challenge.

PETITIONER WAS NOT ENTITLED TO A REDUCTION FOR MINOR OR MINIMAL ROLE

Petitioner argues that the Court, sua sponte, should have applied a reduction to his offense level, pursuant to USSG § 3B1.2, for minor or minimal role in the offense. For those reasons stated below, Rodriguez was not entitled to such a reduction, and counsel did not err in forgoing such a request.

The determination as to role is fact specific. United States v. Cassiere, 4 F.3d 1006, 1026 (1st Cir. 1993). A defendant has the burden of proving that he merits a downward adjustment in the offense level for minor or minimal role. United States v. Mateo-Sanchez, 166 F.3d 413, 417 (1st Cir. 1999); United States v. Cartagena-Carrasquillo, 70 F.3d 706 (1st Cir. 1995).

To qualify as a minor participant, the defendant must be less culpable than his criminal partners in the criminal activity, and "less culpable than the majority of those within the universe of persons participating in similar crimes." Cassiere, 4 F.3d at 1026. See also, United States v. Tom, 330 F.3d 83, 94 (1st Cir. 2003).

"The relevant inquiry is 'whether the defendant was a minor participant in the crime for which he was convicted,' not in some broader conspiracy." United States v. Melendez, 301 F.3d 27, 34 (1st Cir. 2002) (quoting, in part, United States v. Isienyi, 207 F.3d 390, 392 (7th Cir. 2000)). See also, United States v. Neal, 36 F.3d 1190, 1211 (1st Cir. 1994) ("[S]ection 3B1.2 focuses on the role of a defendant with respect to the offense(s) *of which he was convicted.*")

No defendant is automatically entitled to such a downward adjustment even if he does happen to be less culpable than the others involved in the criminal activity. United States v. Brandon, 17 F.3d 409, 460 (1st Cir. 1994). See also, United States v. Daniel, 962 F.2d 100, 103 (1st Cir. 1992) (agrees with proposition that "the fact that a particular defendant may be the least culpable among those who are actually named as defendants does not establish that he performed a minor role in the conspiracy", quoting United States v. Zaccardi, 924 F.2d 201, 203 (11th Cir. 1991)).

In United States v. Coviello, 225 F.3d 54, 67 (1st Cir. 2000), the Court found that the District Court properly denied a minor role reduction where the defendant's guidelines offense level was based only upon his participation in a single transaction involving $3.9 million in stolen property, not upon the entire $17 million applicable to the full conspiracy.

In United States v. Ortiz-Santiago, 211 F.3d 146 (1st Cir. 2000), Ortiz-Santiago (Ortiz) was one of more than 48 defendants involved in a massive drug importation conspiracy. Ortiz was charged in three counts of a twenty-one count indictment. He was charged in the overall conspiracy count and in two counts relating to two specific smuggles. In one smuggle, Ortiz worked as an offloader. In the other, he was a lookout. Ortiz pled guilty to the conspiracy count. The government apparently agreed not to hold Ortiz responsible for the full drug

quantity involved in the conspiracy (approximately 1000 kilograms of cocaine), but only for the amount of drugs applicable to the two smuggles in which Ortiz participated (approximately 50-150 kilograms). At sentencing, Ortiz sought a two-level downward adjustment for minor role. The District Court denied the minor role decrease, noting that the government had not charged Ortiz with the full amount of drugs applicable to the conspiracy. In upholding the District Court, the Circuit Court stated:

> "A defendant cannot insist on having it both ways: if he receives a reduced offense level because the government agrees to understate the quantity of drugs with which he has been involved, the sentencing court, if it sees fit, may keep the scales of justice balanced by denying him the added benefit of a mitigating role adjustment."
> Id. at 149.

In United States v. James, 157 F.3d 1218 (10th Cir. 1998), the defendant's guidelines offense level was based upon the quantity of drugs directly attributable to him, and not the amount of drugs attributable to the conspiracy. At sentencing, the defendant sought an offense level decrease for minor role. The District Court denied the request. The Court of Appeals affirmed. The Court adopted the reasoning of Application Note 4 of USSG § 3B1.2. While noting that the defendant was not convicted of a less serious offense, the Court found that the defendant's sentence was less severe than it might otherwise have been because it was based on the amount of drugs distributed by the defendant himself, not on the collective amount distributed by all conspirators. The Court said "Any further reduction would cede James an undeserved windfall." Id. at 1120.

In United States v. Atanda, 60 F.3d 196, 199 (5th Cir. 1995), a tax prosecution, the Court held that "when a sentence is based on an activity in which a defendant was actually involved, §

3B1.2 does not require a reduction in the base offense level even though the defendant's activity in a larger conspiracy may have been minor or minimal."

In United States v. Ortiz, 966 F.2d 707, 717 (1st Cir. 1992), the Court ruled that even though a defendant was only charged with aiding and abetting a drug sale at which he was culpably present, the District Court was not required to label the defendant a minor or minimal participant in that offense.

In United States v. O'Campo, 973 F.2d 1015 (1st Cir. 1992), defendants O'Campo and Tovar sold cocaine to an undercover agent on two occasions. On the third occasion, O'Campo made another sale of cocaine to the undercover agent. She was promptly arrested. Approximately 90 minutes after O'Campo's arrest, the agent's pager was activated and displayed the number which the agent had used to contact O'Campo. The agent telephoned the number and spoke to defendant Redeondo. Redeondo asked the agent the whereabouts of O'Campo and said that she had failed to return with the money. Redeondo met with the agent, and the agent asked Redeondo if he thought O'Campo had been arrested. In reply, Redeondo laughed and said, "Next time we'll do it upstairs." Redeondo was then arrested. It was clear that Redeondo had been incarcerated when the first two transactions occurred. The Court held that the District Court was fully justified in declining to treat Redeondo as a minor participant.

Rodriguez was neither a minor nor a minimal participant in the conspiracy to which he pleaded guilty. Nor was he engaged in such a limited role with respect to the possession charge. That there was likely a larger conspiracy is of no moment. Rodriguez was in possession of the full amount of cocaine. It was Rodriguez who took the duffel bags of cocaine from the RV to the Maxima. It was Rodriguez who brought the shopping bag, which the Court could

reasonable conclude contained the payment for the cocaine, from the Maxima to the RV. It was Rodriguez who accompanied the cocaine to the Lenox Street location. In short, Rodriguez not only committed, himself, every element of the offenses, but he was completely involved in every step necessary to effectuate the drug transaction. He was not entitled to a role reduction. Counsel was not ineffective for failing to mount a futile challenge.

THERE WAS NO DEPARTURE

Rodriguez argues that he was entitled to notice before the Court departed from the guidelines range. See, F.R.Crim.P. 32(h).

The Court did not depart in this case. The PSR set the advisory guidelines range at 135-168 months imprisonment. No grounds for departure were identified in the PRS. The Court adopted the PSR without change. See, Statement of Reasons in the Judgment. The Court sentenced Rodriguez to the bottom of the range, 135 months imprisonment.

If Rodriguez means that the 135 month sentence constituted a departure from the mandatory minimum sentence of 120 months imprisonment, his legal reasoning is faulty. As noted above, the sentence was within the advisory guidelines range. There was no departure.

If Rodriguez means that he should have received the benefit of the “safety valve” provision, he successfully forfeited that opportunity on his own. At sentencing, the Court took the unusual step of explaining in detail the safety valve provision, the qualification steps for the provision, the difference between acceptance of responsibility and the safety valve, and possible consequences if Rodriguez told the Court he wished to delay the sentencing in order to take advantage of the safety valve provision and then changing his mind at the scheduled agent/defendant interview. After the Court took these steps, Rodriguez himself indicated he

understood all that the Court had explained to him and rejected the Court's offer of an opportunity to qualify for the safety valve. At no time did Rodriguez state that he did not understand or that he felt coerced to refuse the Court's offer.

This ground should be rejected.

CONCLUSION

For those reasons set forth herein, the petition should be denied and Judgment entered for the United States.

Respectfully submitted,

UNITED STATES OF AMERICA
By its attorneys,

Robert Clark Corrente
United States Attorney

/s/ Kenneth P. Madden
Kenneth P. Madden
RI Bar No. 1680
Assistant U. S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
401-709-5000
401-709-5001 (fax)

CERTIFICATION

I hereby certify that on the 23rd day of October, 2007, I mailed a true copy of the Within Government's Memorandum In Support Of Its Objection To Petitioner's Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By Person in Federal Custody, ordinary mail and postage prepaid, to:

Julian Sahagun Rodriguez
Reg. No. 05625-070
Federal Correctional Institution
P. O. Box 5000
Sheridan, Oregon 97378-5000

/s/ Kenneth P. Madden
Kenneth P. Madden
RI Bar No. 1680
Assistant U. S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
401-709-5000
401-709-5001 (fax)